Good morning, Your Honors. May it please the Court and Counsel, my name is Krista Hart. I represent Luis Martinez, the petitioner appellant in this matter. I would like to start with the juror misconduct issue, and I would like to draw the Court's attention to a case cited by the government in their answering brief, Grotemeier. And they cite that case for the proposition that juror misconduct does not always rise to the level of a constitutional violation. However, in Grotemeier, the case actually specifically says that the type of juror misconduct in this case does rise to the level of a constitutional violation concerning the speculation about sentencing. And in Grotemeier on page 880, the case specifically says, The introduction of extrinsic evidence involving sentencing into jury deliberations is error. The simple fact that a juror's statement is based upon past personal experience does not immunize it from Sixth Amendment inquiry. And in this case, Mr. Martinez was facing life in prison, 25 to life on the first-degree murder charge, 7 to life on the attempted homicide charge, and 3 years on the gang enhancement. Two jurors were interviewed, and two jurors both submitted sworn statements that said other jurors had introduced evidence that Mr. Martinez would be out of custody by the time he was about 25 years old, which is a substantial inaccuracy concerning the sentencing. Was it other jurors that were going to do that, or was it just one juror that said that? It's unclear. It's a little bit vague from the affidavits submitted by the two jurors who recall hearing it, whether it was one or whether it was two different individuals. So the jurors did consider that. You say evidence. What kind of evidence did they introduce? These would be the affidavits that were submitted from. No, no. You said they introduced evidence in the jury room. The evidence would be that at least one, possibly two jurors told the rest of the jurors that Mr. Martinez would be out of custody by the time he was about 25 years old. And that's the extrinsic evidence that was admitted. That sounds like deliberations, not evidence. Evidence would be somebody saying, I heard a witness say, and I'm going to report what the witness said. That would be evidence. I don't know if the witness was going to say, I heard a witness say, I heard a witness say that, or I looked up the statute, here's the statute. The Grothmeyer case, what sounds like to me, is it was sort of speculating and saying, well, he probably will only get. And in the Grothmeyer case, Your Honor, which is a Ninth Circuit case from 2004, the panel specifically said, a foreman's speculation about likely sentencing, particularly where the speculation is likely to be prejudicial to the defendant, is error, even where there is not some specific, tangible, extrinsic evidence introduced into deliberations. Thus, it is error. It doesn't have to be a juror who comes in and says, look, I looked up the California Penal Code, and this is what it says. It can be drawn from that juror's life experience. So even if it is part of the law. Kennedy. But a Ninth Circuit case doesn't help you much. Is this an AEDPA case? I'm sorry? This is an AEDPA case? Yes, it is. So Ninth Circuit authority doesn't help you much. You have to find U.S. Supreme Court authority that the State court either contravened or was an unreasonable occasion of. I agree with that, Your Honor. And I discovered this portion of Grotemeier last night as I was rereading it in preparation for today's hearing. Because this is an AEDPA case, and it is a 2254 case, and the Ninth Circuit explicitly found that it was error, presumably there that's the case. The case you're talking about, was that an AEDPA case? Yes, it was. It wasn't a direct appeal? No, Your Honor. It was Grotemeier v. Hickman. And we said in that case that it was a violation of AEDPA? In that case, it specifically said a foreman's speculation about likely sentencing, particularly where the speculation is likely to be prejudicial to the defendant, is error even where there is not some specific, tangible, extrinsic evidence introduced into deliberations. And in that passage, this case goes on to cite three other AEDPA cases which support its finding. Did they cite United States Supreme Court cases? No. These are all Ninth Circuit cases. And they all appear to be based on the case names AEDPA cases. And did we grant a writ in that case? No, because this was in dicta. This was not the specific issue in this case, which is why I believe that the government was relying upon it for its proposition. So you found a Ninth Circuit case that in dicta supports your position? Yes. You know that's not enough under AEDPA. Even if it were a holding, a Ninth Circuit holding, even if it were a Ninth Circuit holding in an AEDPA case, it wouldn't help. I can't. Even if it were a Ninth Circuit holding in an AEDPA case, it wouldn't help, because we can't look to circuit authority. We have to look to Supreme Court authority. I do understand that, Your Honor. Except we can look to circuit authority as interpretation. Yes. Of Supreme Court authority. Yes, exactly. But dicta doesn't do that. If it's dicta. I understand what you're saying, Your Honor. It's greater than nothing. Exactly. What if the examination of Juror No. 2, Griffin, and other jurors could show that the basis for that juror or the two jurors, for their statement about only 25-H and 25-H, and he'd be out, what if that were to produce evidence that, yeah, my husband, who is involved in police work, yeah, he knows it, and that's why I'm telling you that? Suppose that the examination of that juror, Griffin, or the others, would show that that was the basis for the statement that 25 years and he'll be out. That I'm sorry? That what was the basis for that statement? Pardon? I didn't understand the question. You didn't? All right. What I'm trying to find out is if the attorney had done what you contend he should have done, examined Juror Griffin and other jurors before the motion for a new trial, and suppose it could be found, if it were found out in doing so, that the basis for the juror's statement that he's going to only serve until he's 25 years old was something from outside the juror's experience, as I say, maybe her husband was a policeman and knew this, something. It does seem strange that a juror would particularly know that. I agree. It does seem strange. And, actually, under California law, it's not unusual for juveniles to be released at age 25. So it does seem as though the juror did obtain that information from an outside source. Well, this brings you to what Judge Hager alluded to, the issue of ineffective assistance of counsel. Correct. Because if counsel did not conduct any investigation when he got this information to see what the other jurors knew about it. That's correct. Or what other information he might develop. That's correct. And it does appear that a number of years after the fact, the Federal Defender's Office, when they initially had this case on habeas, invested more than 200 hours of investigation trying to work on this issue and were unsuccessful. Well, that doesn't sound like it helps you. Unsuccessful in that they couldn't find the jurors at that point.  After 5, 6 years have passed. I am just about out of time. If there's any other questions. You haven't really talked about ineffective assistance of counsel. Which is your best issue. The ineffective assistance of counsel concerning the juror issue, the counsel did absolutely nothing to investigate. Counsel did absolutely nothing to pursue the issue. Isn't that your best argument? It's a very good argument. Yes, it is. Not your best. When you get two judges who seem to think it's your best. Then it's the best. Judge Kaczynski may tell you, but it's not good enough. But it's your best. The best doesn't mean it's good enough. See, I said it before. But it is true that. Maybe it is the best. But it is true that trial counsel, when the juror made the effort to come to his office, specifically sought him out to provide him with information, he did nothing to pursue that. This was after the trial. This was after the second trial. The first trial ended in a hung jury. They weren't able to reach a verdict. She couldn't very well have come after the first trial, but before the second. Correct. She was a juror on the second trial, right? Correct. So she came after. It would have been miraculous. That is true. So she came after the verdict, I think a day or two after the verdict, because she was so distraught about what had occurred in the jury room. She pursued the attorney. He simply told her to write it down and send it to the court. She wrote it down, and she came back and recontacted him because of her concerns. And he again did nothing, simply said, submit that letter to the court. He made no effort to contact the jurors, while the information presumably would still be fresh in their mind because this was only two days, three days after the verdict had been rendered. And presumably while these folks still lived in the neighborhoods that they lived in and would be easily tracked down and interviewed. And so five years after the fact, when the Federal Defender's Investigator is trying to do that, they're not able to do that. Okay. Thank you. Good morning, Your Honors. May it please the Court. Deputy Attorney General Mark Johnson, on behalf of the appellee here. As was true yesterday, and as you're probably aware, I did not brief this case.    I did not brief this case. I have reviewed the case, and I think it's fairly well briefed. I don't have a lot to add. You don't have anything to say again? Because you didn't brief the case? Well, no. Because your case is so perfect, you don't have to defend it. Is that what? I don't think there's a lot for me to add that's not in the brief. Okay. Well, then why don't you sit down? Unless you want to. There is one point I'd like to touch on briefly, because there might be a misunderstanding here. There was some discussion at the end of counsel's argument about ineffective assistance of counsel perhaps being the best argument here. I don't think there was any misunderstanding. I think it was the best argument. But it's an argument that's not properly before the Court. That's a different question. Can I just add something? Yes. Because it's time-barred under the one-year statute of limitations under ADPA. Unless it relates back, as Mayo says it does, if it's the same bundle of operative facts. Yes. Which it seems to be. Absolutely not, Your Honor. I sinuously disagree with that. Probably too. Pardon me? Aren't the facts that in the initial petition, which is handwritten, he refers to the jury misconduct, gives the facts with respect to that, and says that it should have been investigated by the attorney? It's a very different claim than the one that was raised in the petition in the district court. In the petition in the district court, the claim of ineffective assistance of counsel related to the failure to ---- No, no. I'm not talking about that. I'm talking about the juror misconduct claim. Which was not raised in the district court. By the time the second amended petition was before the district court, the first claim in the original petition had been excised, and the remaining claim of ineffective assistance of counsel related to juror number two exclusively. Well, one of the questions is whether this relates back to the original pro se petition. Yes, it does. And just for the moment, let's assume it does relate back, and therefore we can appropriately consider it. I know that's not your position, but assuming that it does, would that not be ineffective assistance of counsel when you know there's going to be a new trial hearing to examine further juror Griffin, juror number two that came forward and told about how number one, how sorry she is that she didn't stand up and hang the jury, but number two, that she would not forward to the jury by a juror that this person would only serve until he's 25 years old? And if that's the case, wouldn't that be an effective assistance of counsel to not check it further with her rather than just write a letter to the judge, or to examine whether or not number one, the other jurors, at least the juror that had said is going to only serve until he's 25 years old? Well, if that presupposes the question is whether that's ineffective assistance of counsel, I'm presuming you're limiting that to the first prong of Strickland and not to an absolute finding of prejudicial ineffective assistance. Is that correct, Your Honor? Well, we don't know whether it's prejudicial or not until further examination of the jurors. It's not entirely clear whether that statement would constitute judicial misconduct, I'm sorry, juror misconduct at all. No, I'm not talking about juror misconduct. I'm talking about whether the attorney for the defendant should have checked into further what juror Griffin, who came forward, what the basis for her assertion that this was brought up about the sentence, that it would only serve until he's 25 years old, find out further what her basis for that was. And also to examine whatever jurors had said that, or juror, and whether that was from brought from outside the juror deliberation. Well, it's not too common that somebody's just going to know that juvenile people only serve until they're 25. Yes, Your Honor. And to answer that question, first of all, we don't know why the lawyer didn't do that and didn't pursue that further. Perhaps he felt some ethical obligation to step away from this so as not to affect the credibility of testimony that was going to be presented later at the new trial hearing. In other words, to appear free of any influence on that testimony. You understand where I'm going with that. But if you were the attorney for the defendant, you'd want to present that information in the best light you could at a new trial, wouldn't you? I think that the best light you could would be to present it as we did here, is to ask for a hearing and examine the witnesses. And like I said, I think it would be reasonable. Again, we don't know what the reasons were, but I think it would be very reasonable for him to go about conducting the hearing that way so as not to affect the credibility of testimony that was going to be presented later at the new trial hearing. Yes. Do you think there would be an ethical problem in going to see jurors and asking them what they knew about this before the hearing? I don't know that there would be an ethical problem, but it might be viewed as tainting the testimony. But in the broader speaking sense of the word. Well, that would be true if it were before the initial decision of the jury. But here there has been a decision. You're not going to influence the jury as such in their final decision. What you're seeking to do as the attorney for the defendant is to show why there was a problem with having brought up the fact that this guy was going to only serve until he was 25 years old. Well, again, Your Honor, I don't know why the lawyer did that, and so I can't really comment on whether his reasons for proceeding in the way he did were reasonable or not. But in the overall Strickland sense. Well, maybe we ought to have a hearing and then you'd find out the reason. But in the overall Strickland sense, there certainly could be no prejudice. Why could there be no prejudice? We don't know what the other jurors would have said. Because whatever these utterances concerning, you know, a possible sentence, what they might be here, again, this is an ADP. Well, that's pretty significant, what that sentence is going to be, particularly if you look at what this sentence ended up being. This sentence ended up being two consecutive life sentences with no possibility of parole, as opposed to what was brought up in the jury room. Don't worry about it. The guy can't serve any more than until he's 25 years old. This way, he's going to serve until at least he's 72 years old. Well, and we've already litigated this claim of juror misconduct, and it doesn't it simply doesn't amount to a Federal constitutional violation here. Well, juror misconduct is only if something was brought from outside of the jury deliberation or to the jury deliberation that was outside the trial. And I don't think there was anything in the trial that brought up Bob serving until 25. So some way, this juror or jurors got the information that this person is going to only serve until he was 25 years old, as opposed to serving until he's 72 years old. And, again, even assuming that's extraneous information and it did amount to error, it's not significant enough to amount to Federal constitutional error. It is if his attorney is responsible for this by ineffective assistance of counsel. Only if there is a reasonable likelihood that the result here would have been different. Do we know what the juror did after she left the lawyer's office? Did she write anything to the court? Pardon me, Your Honor? Do we know what the juror did after she left the lawyer's office? She presented the letter to the court, as far as I understand. And the court had a proceeding? Yes. That's my understanding. And that's why you say that there were no witnesses presented, because it would have been improper for the lawyer to go contact the witnesses, in which case he might have presented them. I'm not saying that. I'm saying I don't know why the lawyer did it. I'm offering a possible explanation, but it's... Another possible explanation is that he was ineffective. But not prejudicially so, Your Honor. How do you know? If you don't know what the jurors would have said. It's certainly not in an ADPA context. How do you know if you don't know what they would have said? Because taking at face value the truth of what the juror number two said, that alone would not constitute – I mean, the question, I believe, presupposes that there might have been more out there than juror number two indicated, demonstrating misconduct. And if that's the case, it would almost create a constitutional duty in every case for a lawyer to go track down jurors after the fact and... No, only if there's a really significant thing that's brought up during the course of the deliberation. A lot of those things were just normal jury discussion. But here we have a particular thing brought up about the fact that, don't worry about this, this person can only serve until he's 25 years old. Whereas a conviction, two convictions, murder and attempted murder, with consecutive sections. Certainly that was a big difference that the jury would consider. Now, the jury wouldn't know that it's going to be two consecutive sentences. But the jury would know that he's going to only serve until he's 25, so don't worry about it. As opposed to being convicted of murder and attempted murder with whatever sentences there are going to be. Okay. But the point here, Your Honor, is that this information that was delivered by juror number two was taken at face value and presumed to be correct already. And the determination was made improperly so that even if this information – even if this was all true, it would not amount to juror misconduct warranting a new trial. And so that's the issue here. Whether this was prejudicial, we believe juror number two. We believe it happened. We take her at face value. And still – We believe what happened. That a juror made these comments. Well, and we don't know where that juror got that information, whether it was brought into the trial from some other source or it certainly wasn't brought up at the trial. So somewhere that juror had to find out. Right. And assuming that's extrinsic information. That's misinformation, which is misinformation. And assuming it's – right. Assuming it's extrinsic information, assuming it's error, it still is an aggregation that it's enough to warrant a new trial under California law and particularly under controlling Federal Constitution law. There's no controlling Supreme Court precedent that would demand a new trial or any finding of a due process violation based on this. Suppose that the information that was revealed showed that this juror spoke to her husband or spoke to someone in the court system and said, yeah, I know this because I've talked to somebody or other and I know that he's not going to be able to serve any more until he's 25 years old. Now, that would be an extraneous thing would have come in to the jury deliberation, not jury misconduct in the sense that the jury was doing something wrong. But what was wrong was bringing this extraneous information in that would affect the jury by thinking, well, I don't have to worry about these convictions because he's only going to serve until he's 25. Right. And that was the claim set before the trial court. And that was the claim that was made before the California court of appeal, that this was extrinsic information for precisely the reason you stated. And it was still found that that was insufficient to warrant a new trial. And that holding was correct under California law, and it was certainly reasonable under any controlling federal constitutional law. And that's the question here. So even assuming that this Strickland claim is properly before the court, and I maintain it's not under Felix, clearly not. Can you wind up? You're way over time. Okay. Thank you, Your Honor. Thank you. Yes, sir. Let me ask one question. Is there any indication as to who was the shooter that was involved? I don't believe it's clear from the record. I don't believe it's clear from the record. There were several gang members in the truck. Yeah. And I know that there was likely at least two shooters. There was a shotgun blast and shots from a pistol. Yeah. And so I'm not sure how many people were there. Do we know what happened to the other people, the driver and the other people? No, I don't. What seems strange to me, I'll have to say, is here's a situation where we have a driver of a truck that turns around, and we have, I think, three or four other passengers in the car, and this one particular person who was, what, 16 years old at the time, now 22, is charged and convicted with murder, attempted murder, and sentenced to two consecutive life sentences. And I can't, just as a, looking at it as the standpoint of what bothers me about the case, is that it seems like if he wasn't the shooter and apparently was convicted as an aider or a vendor, this is a terrifically bad sentence. And that's why I'm interested in knowing what happened to the other people. He was only one of the passengers in that truck. I don't know what happened to the other people. I imagine if there was sufficient evidence to try the rest of them, they would have been tried. But what's significant here is... Were they not tried? I don't know. I don't know. But what's significant here is, and it was also found that this defendant committed this crime for the benefit of the Criminal Street Act, which in addition to his role as an aider and a vendor made him particularly culpable for this offense. Were there statements? You see, I don't have the complete record from the state court and all that, but I'm just wondering. You don't? Why this enormous sentence for a 16-year-old kid that was a passenger in the car? Because the state of California takes seriously gang-related drive-by shootings, Your Honor. So this one person is being punished for gangs? This one person is being punished for his murderous participation in a criminal street gang. Yes, Your Honor. Thank you. Would you like to take a minute for rebuttal? Would you like a minute for rebuttal? Yes, Your Honor. To be clear, Mr. Martinez was prosecuted under an aiding and abetting theory. He was not alleged to be the shooter in this case. And as far as the ineffective assistance of counsel, I believe that it is pure speculation to say that none of the other jurors would offer anything if the attorney had said so. Explain that for me. What is it you think a competent counsel would have done? Competent counsel? Let me just sort of narrow it down for you. This was not a situation where the juror comes to the lawyer, and the lawyer says, send a letter, and the juror then says, well, forget it, and drops it. The juror does send a letter, does bring the issue to the attention of the trial court. There is a hearing. The witness is examined and cross-examined. What is it that counsel, competent counsel, could have done? Competent counsel should have sat down with an investigator and interviewed that specific juror and asked her questions about what went on in the jury room to try to flesh out what exactly was said. Also, a competent attorney. Also what? I'm sorry? Also what? And then sought to investigate and interview other jurors that were in the room that could either corroborate or provide further information. And how would he have gotten a hold of those other jurors? I take it the case was tried five years ago? That's correct. Okay. And if I remember procedures in California, now you don't even get names, if I understand correctly, in California. They give you a number and take away your name. That is correct in the transcript, Your Honor. But there is a mechanism that allows defense counsel, any counsel, to file a motion with the court and to present this type of information to the court and ask for an unsealing. And then the superior court judge then sends notification to each of the jurors and says, we're going to have a hearing about revealing your information. And the jurors then have a right to come to that hearing to ask that their private information not be revealed. So there is a mechanism within the California state law that allows an attorney to file this type of motion with a trial court to get juror information, such as addresses and contact phone numbers. The jurors do provide that with the court at the beginning of each jury trial, so that in case there's some sort of an emergency and court's going to be canceled, the court can contact the jurors to tell them, you know, court's off today because the judge is sick or whatever. So there is a mechanism in place that allows a trial attorney to get all of this identifying information and to then conduct the investigation that we're discussing here. So the ineffectiveness, if you narrow it down, is in failing to file that motion? It's in failing to file that motion. Also, when you're doing voir dire as an attorney, you are taking notes about people's first and last names. You're taking notes about where they live, what type of work they do. So even if you don't have that specific motion, you have enough of your own notes to know, and you might be able to find these jurors without doing that motion. So there's a lot of things that you can do. So while the jurors are reduced to numbers... Are you allowed to contact the jurors since the jurors have this? I'm just asking as a matter of state law. Yes. Since they have this anonymity protection. Yes. At the end of the jury trial, the court typically instructs the jurors that at this point forward, once the trial is over and they've been released, it's up to the jurors if they want to contact... No. I understand that if you see the juror on the street... Yes. Or in the corridor, you can talk... There is... Let me finish. Okay? You can talk to the juror, ask questions. So as the jury is filing out, the lawyers can stand there and say, tell me what happened. But there's, from what I hear, an individual protection about the address and other details about the juror. The juror has certain rights not to have personal information revealed. Are lawyers, may lawyers ethically try to get around that by taking notes in the courtroom and investigating? I just don't know. Yes. An attorney is allowed to do that. There's no prohibition against an attorney, after the trial is over, contacting jurors to talk to them about the trial, is there? Correct. There is no prohibition. So you can take the name and then put it and do a search on the Internet and get their social security number and personal information. I don't know. I just don't know. Knowing the jurors' first and last names, and typically you know the area that they live in, and typically you know what type of work that they do, that's not sealed information, and that's taken during your notes during voir dire, if you give that to an investigator, an investigator can use whatever tools... You know, two questions. The first one, is there any prohibition against the juror making that effort to contact, the attorney making the effort to contact jurors? No, there's no prohibition. There's not. Now, the next question, is there a practical way to do it, is what you're talking about now, and I think Judge Kaczynski can tell you from his experience with the Internet that not very hard to find anybody. That's correct. Yeah, I'm sure that there are ways of finding people. I'm just wondering if, now they don't even give names in the courtroom, as I understand, so if you're in a trial in state court, jurors come up with numbers only, and so they don't give first or last names or anything like that. I don't believe that's true. I've done a trial within the past year and we addressed all of the jurors by their names. Not that it has anything particularly to do with this case, but just from my standpoint of wondering from a judicial administration, why this 16-year-old boy was picked out of those passengers in the truck as being the one who, not the shooter that was ever shown, but being one who aided and abetted. Did he aid and abet anybody more than any of the others? I don't believe so, no. And do you know what happened to the others? I do not. Okay. They were not arrested together. Mr. Martinez was arrested a few years after the fact, and he wasn't ---- Because of his letter, right? Correct, correct. When I was reading through the information, when the briefs were being filed for him as a pro se, they said he was illiterate. That's correct. He is illiterate, he cannot read or write, and he cannot speak English. How could he have written a letter that started this whole procedure against him? It was written in Spanish. By him? So he wasn't illiterate. It's not clear that it was penned by him directly. All we know is that it had his name on it, and it came from the jail, and the jailors intercepted it from him. So whether he sought to have another inmate actually write down his thoughts for him, I don't know the answer to that question. Because if a person is illiterate, he's illiterate in all languages, and that's what they said in filing that brief. He was illiterate. Correct. But he had another individual write his brief for him, which that is in the brief, and it's not known whether he had another inmate at the jail write the letter for him, which is entirely possible. I don't know. I'm illiterate in Chinese, but I can read pretty good in English. Not so well. Not so well. Only I have opinions. Okay. Thank you. Thank you. The case is argued. We'll stand submitted. We'll next hear argument in the United States v. Motley. Thank you.
judges: Kozinski, Hug, Reinhardt